UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO: 1:06CR-62-R

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.

JEFFERY HALL (1)
ADRIAN NOLAN(2)
                                                                                                                        DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Adrian Nolan's Motion to Suppress Evidence (Docket #32). A Suppression Hearing was held in this matter on August 28, 2007. Per the order of the Court (Docket #35), Defendant Nolan filed a Brief on Motion to Suppress Evidence (Docket #54) and the United States filed a Post-Hearing Memorandum on Defendant Nolan's Motion to Suppress Evidence (Docket #56).

Defendant Hall also filed a Motion to Suppress Evidence (Docket #26), participated in the Suppression Hearing, and filed a Memorandum Regarding Motion to Suppress (Docket #55). However, in that Memorandum, Defendant Hall stated that he has no standing to challenge the search of Defendant Nolan. Further, Defendant Hall admitted that his arrest and the search of the vehicle pursuant to that arrest was proper. Thus, it does not appear that Defendant Hall wishes to pursue his Motion to Suppress, and the Court will not discuss it in this memorandum. To the extent the Court addresses Defendant Hall, it will be in the context of Defendant Nolan's motion.

This matter is now ripe for adjudication. Defendant Hall's Motion to Suppress is **DENIED**. For the following reasons, Defendant Nolan's Motion to Suppress is also **DENIED**.

**BACKGROUND**

A suppression hearing was held on August 28, 2007, in Bowling Green, Kentucky. Simpson County Deputy Sheriff Eddie Lawson ("Lawson"), testifying for the Government, was the only witness at the hearing. However, the parties were asked to file supplemental briefs on the matter. The facts as set forth below are taken from Lawson's suppression hearing testimony and the briefs filed by the parties.

On June 19, 2006, Lawson was on patrol in Franklin, Simpson County, Kentucky, when he became suspicious of a vehicle he encountered at a four-way stop on Roosevelt Street in Franklin. Lawson became suspicious of illegal activity because although the vehicle had approached the stop before Lawson, it did not proceed through the intersection. When the vehicle did eventually proceed through, Lawson began to follow. Lawson followed the vehicle to a gas station, where an occupant exited the vehicle, entered the gas station, and returned to the vehicle. He hen continued to follow the vehicle until it turned with an improper signal onto West Street from Jackson Street. At that point, at approximately 1509 hours (3:09 p.m.), Lawson turned on the lights in his cruiser, triggering the video system in his car, and then stopped the vehicle for failing to signal a turn, a violation of KRS § 189.380 (2007).

After making the stop, Lawson approached the vehicle and asked for the driver's license. He ran a standard driver's license check, identified the driver as the Defendant Jeffery Hall ("Hall"), and found that Hall's Tennessee license had been suspended. Lawson then returned to the vehicle and placed Hall under arrest for driving on a suspended license. He placed Hall in the backseat of his cruiser and called for assistance.

Upon approaching the vehicle again, Lawson recognized the passenger in the car as the Defendant Adrian Nolan ("Nolan") and knew he had previously been arrested for drug offenses.

Lawson ordered Nolan out of the car and conducted a pat-down search of his person. Lawson did not find anything illegal on Nolan's person, but felt a bulge in his left front pocket that he suspected to be a large amount of money. Lawson then asked Nolan what the bulge was, and Nolan responded that it was money. Lawson asked if he could look at it, and Nolan handed it to him. Lawson did not immediately count the money, but observed that it was several bundles of bills divided by denomination and individually wrapped with rubber bands. Lawson also observed that Nolan appeared to be "under the influence of something," and suspected that it was marijuana. Lawson handcuffed Nolan and sat him on the ground.

Lawson then began to search the vehicle. He started his search at the front of the car and discovered a large amount of currency, later found to total $5800, in the glove compartment, divided by denomination, and spread among a Crown Royal bag and two socks.

Agent Payne with the Drug Task Force arrived at the scene and assisted Lawson in the search of the vehicle. Agent Payne found a loaded firearm located underneath the driver's seat, wedged between the cushion and the metal frame of the seat. Lawson then advised Hall of his Miranda rights and began questioning him about the firearm. Hall told Lawson he bought the gun in Nashville. The computer dispatch record shows Lawson was later informed that the firearm had been stolen.

At this point, Lawson requested that a drug-sniffing dog be brought to the scene, and Agent Hunter of the Drug Task Force responded with his canine. Nolan was moved from his position on the ground to the backseat of Sergeant Wade's car, who had arrived at the scene. The canine began a sniff search around the outside of the vehicle at 3:34 p.m. The canine was taken around the vehicle approximately four times, was brought to directly sniff the money taken

from Nolan's person and from inside the vehicle, and was also taken inside the vehicle. The canine apparently made a positive alert indicating the presence of drugs on the outside of the passenger side of the vehicle; however, the officers found no drugs there or anywhere inside the vehicle.

After the alert by the canine, Lawson went over to Nolan and asked Sergeant Wade if Nolan had been advised of his rights. Sergeant Wade replied that he had, Lawson asked Nolan if he remembered the rights that had been read to him, and Nolan replied that he did. Lawson then began to interview him and told him what he had found, and during the course of the interview, Nolan produced a small quantity of marijuana that had been hidden somewhere on his person. Lawson then arrested him. The reported time of the arrest is 1600 hours, or 4:00 p.m.

Lawson transported both Hall and Nolan to jail. At the jail, Lawson informed Nolan that if he had any drugs hidden on his person, he needed to reveal them before entering the jail or he could be charged with the felony of promoting contraband. At that point, Nolan produced a quantity of cocaine by shaking it out of his pants. Nolan has only been charged on cocaine-related counts.

## DISCUSSION

**1. Outline of the Situation Precipitating Nolan's Detention**

Nolan seeks an order suppressing the cocaine he produced, arguing that the duration and intrusiveness of his detention before his arrest were unreasonable and in violation of the Fourth Amendment of the United States Constitution. This case presents a convergence of varying permissible reasons for a police officer to detain and search a vehicle and its occupants, all of which were satisfied under the circumstances of the situation.

First, Lawson became suspicious of Hall and Nolan's vehicle, and eventually stopped it for a traffic violation, the occurrence of which is not disputed. "The Fourth Amendment...permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop." *United States v. Burton*, 334 F.3d 514, 516 (6th Cir.2003) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1999)). "[S]topping an automobile and detaining its occupants constitute a 'seizure within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention is quite brief." *United States v. Hill*, 195 F.3d 258, 263 (6th Cir. 1999) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). An ordinary traffic stop is analogous to an investigative detention, "and the principles announced in *Terry v. Ohio*, 392 U.S. 1 (1968), apply to define the scope of reasonable police conduct." *Id.* (citing *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996)).

Thus, "any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *Id.* at 264 (citing *Palomino*, 100 F.3d at 449 (citing *Terry*, 392 U.S. at 20)). "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *Id.* (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc), cert. denied, 525 U.S. 1123 (1999); *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). While "articulable suspicion" is not a particularly clear standard, it has been said that "the totality of the circumstances -- the whole picture -- must be taken into account. Based upon that whole picture the detaining officers must have a particularized and

objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 271-72 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).  With a reasonable suspicion that criminal activity is afoot, an officer may conduct a full search of the vehicle.  *See id.*

During the initial traffic stop here, something did occur that caused Lawson to have a reasonable suspicion that Nolan was involved in criminal activity.  *See id.*  Upon stopping the vehicle and identifying its occupants, Lawson found that Hall was driving on a suspended Tennessee license, and arrested him for that offense.  When a police officer makes a lawful custodial arrest, this "justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area.  Such searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *New York v. Belton*, 453 U.S. 454, 457 (1981) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)).  "[T]he Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest." *Thornton v. United States*, 541 U.S. 615, 618 (2004) (discussing the Court's holding in *Belton*, 453 U.S. 454)).

While at this point Nolan was not suspected of any particular unlawful activity, and was not under arrest, Lawson was justified in ordering him out of the vehicle and subjecting him to a pat-down search for several reasons.  First, Nolan's companion Hall had just been placed under custodial arrest.  Second, Lawson was alone at the scene, and with two occupants in the car, had a legitimate desire to ensure his safety.  Third, Lawson recognized Nolan as a person with a known history of drug activity and noted that he appeared to be under the influence of drugs. While the Sixth Circuit Court of Appeals has declined "to adopt a so-called 'automatic

6

companion' rule whereby any companion of an arrestee would be subject to a 'cursory pat-down reasonably necessary to give assurance that they are unarmed," it may still be appropriate for an officer to conduct a pat-down of an arrestee's companion considering the totality of the circumstances. *United States v. Wilson*, 2007 U.S. App. LEXIS 25289, at *12-13 (6th Cir. Oct.29, 2007) (quoting *United States v. Bell*, 762 F.2d 495, 498 (6th Cir. 1985)).

The totality of the circumstances here justified Lawson's pat-down of Nolan. Not only did Nolan appear to be under the influence of drugs, he was a passenger in a car where the driver had just been arrested for driving on a suspended license, and all of this may have reasonably led Lawson to believe that criminal activity was occurring. *See Hill*, 195 F.3d at 264.

Further, in searching the passenger compartment of the vehicle incident to Hall's arrest, Lawson and Agent Payne, who had arrived at this time, had even further justification for suspecting criminal activity. Agent Payne found a loaded firearm hidden under the driver's seat within reach of the driver, which the officers were informed was stolen, along with a large amount of money in the glove compartment divided by denomination. While the firearm was not within Nolan's immediate area of control as the passenger of the vehicle, the large amount of currency was within his area of control. Further, the officers could have reasonably believed that there were more weapons in the car.

Lawson and the other officers that arrived at the scene were entitled to assess the circumstances in light of their experience as police officers and their knowledge of drug-related activity. *See United States v. Cortez*, 449 U.S. 411, 416, (1981) ("Evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."). Thus, the officers, based on their experience, may

have reasonably believed that the vehicle and its occupants were involved in drug-related activity.

Thus, at this point Lawson and the other officers were faced with a vehicle stopped for a traffic violation, the driver under arrest for driving on a suspended license, a loaded firearm that was likely stolen, the presence of large amounts of cash, and a passenger known to be involved in drug-related activity seemingly under the influence of illegal drugs. The Court believes that the convergence of these factors more than justifies "a reasonable and articulable suspicion that criminal activity was afoot." *Hill*, 195 F.3d at 263. Therefore, the officers had a justifiable reason for further detaining Nolan while a more extensive search of the vehicle, including the use of a trained narcotics canine, was conducted.

### 2. The Reasonableness of Nolan's Detention

Nolan does not dispute the legality of the initial traffic stop, the fact that Lawson and other officers conducted a search of the vehicle pursuant to the stop and Hall's arrest, or the search of his person. Instead, Nolan argues that the *length* of his detention, for over fifty minutes, was excessively intrusive and without any reasonable basis, and was therefore in violation of the Fourth Amendment.

As Nolan's detention was not incident to his arrest (only Hall was arrested before the extensive search of the vehicle began), the reasonableness of his detention must be evaluated under the *Terry* inquiry. In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court "adopted a dual inquiry for evaluating the reasonableness of an investigative stop." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (discussing *Terry*). Under this approach, a court should examine "whether the officer's action was justified at its inception, and whether it was

reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. (quoting *Terry*, 392 U.S. at 20).

"If an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). However, there is "no rigid time limitation on *Terry* stops." *Id*. There is no bright line rule regarding the appropriate length of such a stop; rather, a court should "consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id.* (citing *United States v. Hensley*, 469 U.S. 221, 228-229; 234-235 (1985)).

"In assessing whether a detention is too long in duration to be justified as an investigative stop," a court should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686. While there will likely always be some imaginable alternative means by which the police could have accomplished their objectives regarding the detainee, "[t]he question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.*

Upon first spotting the vehicle, Lawson found it suspicious. When he stopped the vehicle for a traffic violation at 3:09 p.m., he found that the driver had a suspended license and thus arrested him at about 3:12 p.m. During this period of time, Nolan was not detained in any way and instead remained in the car. Having just made an arrest, Lawson decided, for his own safety, to conduct a pat-down of Nolan at around 3:15 p.m. (15.14.58 hours, according to the Defendant). It is at this point that Nolan can truly be considered "detained," as his freedom of movement was restricted by the handcuffs. Upon approaching him, Lawson immediately

9

recognized him as someone known to deal narcotics, and upon asking him to exit the car suspected that Nolan was under the influence of drugs. He thus subjected him to a pat-down search and found a large amount of currency in Nolan's left pocket, which Nolan allowed Lawson to examine.

Given that there were two persons in the vehicle and Lawson was alone, it was reasonable for Lawson to call for assistance, and there is no indication that it took Agent Payne any unreasonably large amount of time to arrive at the scene. Lawson and Payne's search of the vehicle, which was valid incident to Hall's arrest, revealed a large amount of money and a concealed, loaded firearm, which could have reasonably increased the suspicion of criminal activity. There is no indication that Lawson and Payne did not search the car diligently or that they took an unnecessary amount of time in doing so.

At 3:32 p.m, twenty-three minutes after the initial stop, computer dispatch records show that Lawson was informed the firearm was likely stolen, further increasing the officer's reasonable suspicion of criminal activity, and justifying an extensive search of the vehicle. "Officers who stop a person who is 'reasonably suspected of carrying drugs' are 'entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions,' and to take reasonable measures to protect themselves." *United States v. Jacob*, 377 F.3d 573, 578 (6th Cir. 2004) (quoting *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001)).

Here, the officers found one concealed, loaded, stolen firearm and a large amount of cash divided by denomination inside the vehicle. They had a driver under arrest for a suspended license, and a passenger who appeared to be under the influence of drugs also carrying a large

amount of cash divided by denomination. It appears to the Court that the officers were justified in suspecting illegal drug related activity as to both Hall and Nolan, and thus necessarily extending the search and further detaining Nolan. Further, there was reason to call and wait for an officer with a trained canine to complete the search of the vehicle.

Agent Hunter and his canine arrived at about 3:35 p.m. (15.34.59 hours, according to the Defendant), twenty minutes after Nolan had been placed in handcuffs and only three minutes after the officers were informed that the firearm had been stolen. Nolan has not argued that the time it took Agent Hunter and his canine to arrive was unreasonable, and the Court sees no evidence in the record that it was unjustifiably excessive. Thus, Nolan's detention awaiting the arrival of Agent Hunter and the canine was justified and reasonable.

The search of the vehicle, by both the canine and the officers, appears to have lasted until 3:53 or 3:54 p.m. (15.53.53 hours, according to the Defendant), or for about twenty minutes after the canine arrived. Detentions for the purpose of proceeding with a canine sniff test are permissible. *United States v. Borrero*, 770 F. Supp. 1178, 1191 (E.D. Mich. 1991) (citing *United States v. Place*, 462 U.S. 696 (1983); *United States v. Knox*, 839 F.2d 285 (6th Cir. 1988); *Jackson v. Wren*, 893 F.2d 1334 (6th Cir. 1990)). Further, the Court does not believe that the twenty minutes it took the canine to search the vehicle was unreasonable, or that Nolan's detention during that time was unreasonable. The police had a reasonable suspicion that the vehicle contained narcotics that could be attributable to Nolan, and it appears reasonable that it would take a trained canine twenty minutes to complete a thorough search of the vehicle.

Just as there is no rigid time limit to *Terry* stops, there is no rigid time limit to searches by a drug-sniffing canine pursuant to a *Terry* stop; the totality of the circumstances should still be

11

considered. *See Hill*, 195 F.3d at 271-72. For example, in *United States v. Davis*, the Sixth Circuit Court of Appeals reasoned that because "it was reasonable for the police to suspect, based on articulable facts, that [the defendant's] vehicle contained narcotics," it was not unreasonable to detain the defendant, stopped for a traffic violation, for the approximately thirty to forty-five minutes it took for the police to bring a drug-sniffing dog to the scene and have the dog check the vehicle for the presence of narcotics. *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).

Nolan argues that the video of the incident, recorded from Lawson's cruiser, does not show the canine alerting to any part of the vehicle in four trips around the vehicle. Nolan asserts that the canine's repeated search of the vehicle without finding anything only served to diminish any suspicion that he was involved in drug activity and made his detention unreasonable. Nolan claims he should have been released once the canine failed to find anything, as the officers had found nothing in the vehicle tying him to criminal activity.

In contrast, the Government claims that the canine hit or alerted on the outside of the passenger door, near the location where Nolan had been sitting. This disputed 'hit' was discussed by Nolan in his memorandum accompanying his motion to dismiss, but the veracity of the Government's assertion that the canine alerted to the presence of drugs was not questioned at the suppression hearing. However, the Defendants did not have access to the video of the incident until after the hearing.

The Court has viewed the video of the incident taken from Lawson's cruiser. However, the passenger side of the vehicle is not visible on the video, as Lawson's car is not positioned directly behind the Defendants' vehicle. When Agent Hunter and his canine arrive and search the vehicle, the canine can only be seen when he is on the driver's side of the vehicle and at the back

of the vehicle. Once Agent Hunter and the canine move past the back passenger side tail light, they disappear from view. Occasionally, portions of Agent Hunter's body move in and out of the video, but it is impossible for the viewer to observe the canine or Agent Hunter in any detail. Therefore, the Court cannot respond to Nolan's allegation that the canine did not alert on the front passenger side door as asserted by the Government. Thus, based on the information before it, and for the purposes of this motion, the Court will accept the Government's contention that the canine alerted to the presence of drugs on the outside of the passenger side of the vehicle.

After a trained narcotics canine positively reacts to the presence of contraband, a "reasonable suspicion" of criminal activity is elevated to "probable cause." *United States v. Sinclair*, 983 F.2d 598, 602 (4th Cir. 1993) (citing *Florida v. Royer*, 460 U.S. 491, 506 (1983) (plurality opinion)); *see also United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003)). Nolan does not dispute the canine's qualifications or reliability, there has been no indication to the contrary, and the Court will assume that the canine was properly trained and certified.

After, and as a consequence of, the canine's alert, Lawson began questioning Nolan where he sat in the backseat of Sergeant Wade's car. Lawson confirmed that Nolan had been advised of his rights, told him what had been found and talked to him for about five or ten minutes before Nolan produced a small quantity of marijuana. Nolan does not argue that his production was somehow coerced, but instead argues that he should not have been questioned at all because the officers should have released him after their search of the vehicle did not turn up anything incriminating and after the canine failed to alert to the presence of drugs.

At or about 4:00 p.m., Nolan was arrested for misdemeanor possession of marijuana. In total, calculating from the time he was handcuffed and searched, Nolan was physically detained

13

and restrained prior to his arrest for about forty-five minutes, although the entire incident lasted about fifty-one minutes. All of this led to Nolan's transportation to the jail, where he voluntarily produced the cocaine that led to the charges against him and which he seeks to suppress.

Under all of these circumstances, the Court finds no reason to believe that the officers did anything but diligently pursue their investigation of Nolan or that the detention lasted any longer than was reasonably necessary to effectuate the purpose of the *Terry* stop.

## CONCLUSION

For the foregoing reasons, Defendant Nolan's Motion to Suppress is **DENIED**. Defendant Hall's Motion to Suppress is also **DENIED**.

An appropriate order shall issue.